IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| DAVID MARTIN HABER, | |
| Plaintiff, | Civil No. 18-11888 (RBK/KMW) |
| v. | **OPINION** |
| NEW JERSEY TRANSIT, *et al.*, | |
| Defendants. | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendants New Jersey Transit ("NJT"), Joseph Orlando, Meg Morocco, Pat Jackson, and Brett Haroldson's Motion to Dismiss *pro se* Plaintiff David Martin Haber's Complaint (Doc. No. 24), and Plaintiff's Motions for Default Judgment (Doc. Nos. 19, 23). Plaintiff injured his wrist while stepping off an NJT train, sued in state court, and lost. He is now suing NJT again, along with various players from his state court lawsuit, claiming that they conspired to violate his due process rights. For the reasons detailed herein, Plaintiff's Motions for Default Judgment are **DENIED** and Defendants' Motion to Dismiss is **GRANTED**.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

The case before the Court emerged from a personal injury complaint filed by Plaintiff in the Superior Court of New Jersey, Essex Vicinage on May 18, 2017.[1] (Doc. No. 24-2 at 2). In that

---

[1] Given the paucity of Plaintiff's one-paragraph Complaint, much of this section is drawn from documents attached to Defendants' Motion to Dismiss, which consist of court filings and records from earlier phases of this litigation. On a motion to dismiss, the Court may consider documents outside the pleadings when the documents are indisputably authentic, as is usually the case with court filings and records. *Sentinel Tr. Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003).

1

case, Plaintiff alleged that he sustained a wrist injury when he tripped while departing a NJT train due to an allegedly uneven and wide gap on the platform. (*Id*.). Plaintiff sued NJT for his wrist injury and pain and suffering. (*Id*.). NJT moved to change venue and extend the deadline for their responsive pleading on August 23, 2017. (*Id.* at 6.). On the same day, Plaintiff moved for default judgment. (*Id.* at 27). On or about September 11, 2017, Plaintiff filed a motion opposing a venue transfer and opposing a time extension. (*Id.* at 31). Nevertheless, the motion was granted by Judge Vena, and venue was subsequently transferred to the Camden Vicinage on September 15, 2017. (*Id.* at 41).

NJT filed an answer on October 17, 2017, and on October 20, 2017 Plaintiff filed a notice of appeal, "notice of motion for an order vacating all orders of Judge Thomas R. Vena" and a motion for "waiver of court transcript request fee." (*Id.* at 44, 70). On October 31, 2017, Appellate Division Clerk Joseph Orlando notified Haber that his appeal was deficient for failing to submit a Transcript Request Form and failing to submit a certification in support of the motion for an order vacating all orders of Judge Vena. (*Id.* at 75). Orlando again contacted Haber the following day, stating that the notice of appeal "caused us to question whether the determination being appealed is final." (*Id.* at 77). In this letter, Orlando notified Haber about how to seek leave for an interlocutory appeal, moving for leave to appeal, or seeking appeal of final judgement. (*Id*. at 78).

Meanwhile, as communications regarding the appeal were occurring, the trial court matter was still active and on March 6, 2018, NJT filed a motion to extend discovery. (*Id.* at 80). The discovery period was subsequently extended to April 15, 2018. (*Id.* at 89). On April 9, 2018, Plaintiff moved to "disqualify and remove" Deputy Attorney General Brett Haroldson, who was representing NJT, for "grossly violating the code of professional ethics" and "willfully making false statements to the court." (*Id.* at 92). Plaintiff further explained that he filed a "collusion and

conspiracy complaint." (*Id*.). Four days later, on April 13, 2018, Plaintiff filed a motion "to disqualify attorney and punish." (*Id.* at 99). NJT filed both a motion to dismiss and a motion for summary judgment on April 20, 2018. (*Id.* at 110). That same day, Haroldson opposed Plaintiff's motion to disqualify and "motion to punish." (*Id.* at 172). Plaintiff's motion to disqualify was denied on April 27, 2018, and Plaintiff's "motion to punish" was denied on May 10, 2018. (*Id.* at 176, 178). NJT's motion to dismiss was also denied on May 10, 2018. (*Id.* at 180). However, NJT's motion for summary judgment was granted on May 25, 2018. (*Id.* at 183).

Plaintiff filed the instant Complaint on July 17, 2018, naming NJT, Haroldson, Orlando, Meg Morocco, and Pat Jackson as Defendants. (Doc. No. 1 ("Compl.") at 2). Plaintiff's complaint identifies his wrist injury from the state court matter and alleges that he was "denied due process" and that "all defendant(s) in this case colluded and conspired" to deny him due process. (*Id*. at 3). Although Plaintiff does not specify his cause of action, the Court construes the Complaint to be invoking 42 U.S.C. § 1983 and state tort law. Shortly after Plaintiff filed this suit, on August 3, 2018, Chief Judge Linares ordered a stay on all matters docketed in the District of New Jersey in which NJT was a defendant. (Doc. No. 5).

When Plaintiff filed his federal complaint, Plaintiff's interlocutory appeal from October 2017 was unresolved. Orlando contacted Plaintiff again on August 1, 2018 to explain the deficiencies in his appeal. (Doc. No. 24-2 at 188). In this correspondence, Plaintiff was offered an opportunity to amend his interlocutory appeal. (*Id*.). On August 8, 2018, Morocco, a case manager with the Appellate Division, wrote to Plaintiff indicating that Haroldson had called the Appellate Division to notify them that the Attorney General's office was never served with Plaintiff's appeal papers allegedly due to an incorrect address of service. (*Id*.). On August 20, 2018, the Essex County Counsel submitted a letter to the Appellate Division Clerk, Orlando, opposing Plaintiff's

motion for the County of Essex to bear the expense of his requested transcripts. (*Id*. at 193). The Appellate Division subsequently denied Plaintiff's motion for a free transcript on September 10, 2018, and further explained to him the proper way to continue pursuance of his appeal. (*Id*. at 199). Finally, on October 2, 2018, Plaintiff was notified that his appeal would be dismissed on October 22, 2018. (*Id*. at 202).

Meanwhile, in the federal case, Plaintiff filed proof of service on Jackson, Morocco, and Orlando on August 29, 2018. (Doc. No. 8). On September 19, 2018, the Attorney General's office entered an appearance of behalf of all Defendants. (Doc. No. 10). The following day, Plaintiff filed a motion for default judgment, which the Court denied on October 24, 2018. (Doc. Nos. 11, 13). Plaintiff filed another motion for default judgment on January 15, 2019, which was again denied on January 16, 2019. (Doc. Nos. 14, 15).

On July 12, 2019, the stay was lifted and this matter was reinstated to the active docket. (Doc. No. 18). Plaintiff filed another motion for default judgment on July 16, 2019. (Doc. No. 19). Defendants filed an opposition the same day and requested an extension to August 16, 2019 for their responsive pleading. (Doc. No. 20). Plaintiff filed another motion for default judgment and an opposition to Defendants' extension request on August 5, 2019. (Doc. No. 23). Defendants moved to dismiss the complaint on August 6, 2019. (Doc. No. 24).

## II.  LEGAL STANDARD

Defendants first move to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). An attack on subject matter jurisdiction can either be facial—based solely on the allegations in the complaint—or factual—looking beyond the allegations to attack jurisdiction in fact. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Where the challenge to subject matter jurisdiction is facial, the court must take all the allegations

in the complaint to be true and construe them in the light most favorable to the plaintiffs. *Id*. However, when the Rule 12(b)(1) motion is a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id*. Further, a Court may "review evidence outside the pleadings" in determining whether subject matter jurisdiction exists when a factual attack to a pleading is made. *See United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).

Defendants also move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). When deciding such a motion, the court limits its review to the face of the complaint. *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011). The Court must accept as true all well-pleaded factual allegations and must construe them in the light most favorable to the plaintiff. *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The inquiry is not whether [a plaintiff] will ultimately prevail in a trial on the merits, but whether [he or she] should be afforded an opportunity to offer evidence in support of [his or her] claims. *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To determine whether a complaint is plausible on its face, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id*. (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than

conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can infer only that a claim is merely possible rather than plausible. *Id*.

### III. DISCUSSION

#### A. Plaintiff's Motions for Default Judgment

In order to obtain default judgment under Federal Rule of Civil Procedure 55(b), a plaintiff must first secure an entry of default from the clerk of the court under Rule 55(a). *Allaham v. Naddaf*, 635 F. App'x 32, 36 (3d Cir. 2015). Only after the prerequisite default has been entered by the clerk of court may the non-defaulting party move for default judgment pursuant to Rule 55(b)(2). Fed. R. Civ. P. 55. Additionally, courts consider three factors when deciding whether to grant default judgment: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir.2000).

Plaintiff's motions for default judgment must both be denied. An entry of default is a mandatory procedural prerequisite in order to obtain default judgment under Rule 55(b). *See e.g. Graise v. Marie,* No. 12-05232, 2013 WL 1155281 (D.N.J. Mar. 20, 2013) (denying Plaintiff's motion for default judgment for failure to first secure an entry of default). Because Plaintiff failed to secure an entry of default prior to filing either of his motions, they must fail.

#### B. The Untimeliness of Defendants' Motion

Under Federal Rule of Civil Procedure 12(a)(1)(i), a Defendant has twenty-one days to file an answer or motion to dismiss after being served with the summons and complaint. In this case, that simple math was scrambled by the stay entered after Plaintiff filed his complaint but before Defendants were served. Nevertheless, after the stay was lifted on July 12, 2019, Defendants accepted that their response to the complaint was due on August 2, 2019. (Doc. No. 20 at 2). However, Defendants failed to file the present Motion to Dismiss until August 6, 2019.

Prior to filing their Motion to Dismiss, Defendants did request a fourteen-day extension of the time to file a responsive pleading. *Id.* Pursuant to New Jersey Local Civil Rule 6.1(b), "the time within which to answer or reply to any pleadings as to which a responsive pleading is permitted may . . . be extended once for a period not to exceed 14 days on order granted by the Clerk. Any other proposed extension of time must be presented to the Court for consideration." This "breathing room rule" is applied to minimize prejudice and ensure the interests of justice are being served. *Curbison v. United States Gov't of New Jersey*, No. 05-5280, 2006 WL 3544560, at *4 (D.N.J. Dec. 7, 2006). However, neither the Clerk nor the Court granted Defendants' extension request, meaning that Defendants' filed their Motion to Dismiss late. As such, the Court must assess whether it should accept Defendants' Motion.

Local Civil Rule 6.1(b) exists "because, generally speaking, no prejudice is caused by the filing of an answer within 14 days after the due date." *Prall v. Ellis*, No. 10-1228, 2012 WL 4490729, at *3 n.2 (D.N.J. Sept. 27, 2012). As such, courts typically excuse a party's failure to secure a Rule 6.1(b) extension before filing late if there is no prejudice to the other parties in the case. *See id.* (excusing six-day late filing because there was no harm to the interests of justice); *Curbison*, 2006 WL 3544560, at *4 (excusing late filing of motion to dismiss because there was no prejudice to plaintiff, who had "ample time" to oppose motion). In this case, Plaintiff has failed

to indicate how Defendants' minor delay in filing their motion prejudiced him. Further, he was given adequate time to respond to Defendants' Motion. As such, the Court will proceed to address the merits of the Motion to Dismiss.

### C. Motion to Dismiss

While Defendants raise a host of reasons why Plaintiff's Complaint must be dismissed, the Court finds it necessary only to address three of them. First, Plaintiff's state tort law claim against NJT is barred by the *Rooker-Feldman* doctrine. Second, his Section 1983 claim against NJT is barred by the doctrine of sovereign immunity. Finally, Plaintiff's claims against the individual Defendants fail to comport with Federal Rule of Civil Procedure 8(a). As such, the entirety of Plaintiff's Complaint must be dismissed.

#### 1. The Rooker-Feldman Doctrine

Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010); *see also D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). The doctrine is confined to "'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Great Western*, 615 F.3d at 166 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Further, 28 U.S.C. § 1257 establishes that only the Supreme Court has jurisdiction to review a state court decision. *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 324 (3d Cir. 2000).

Four requirements must be satisfied before the Court can apply the *Rooker-Feldman* doctrine: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complains of injuries caused

by the state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great Western*, 615 F.3d at 166 (citing *Exxon*, 544 U.S. at 284). Further, "the second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." *Id*.

With respect to the second requirement, a federal plaintiff's claim is not barred unless a state court judgment was the source of Plaintiff's injury. *Great Western,* 615 F.3d at 166. More specifically, the essential task is to identify federal suits that "profess to complain of injury by a third party, but actually complain of injury 'produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" *Id*. at 167 (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir.2005)). Thus, a federal claim is inextricably intertwined with the state adjudication when federal relief can only be granted by finding that the state court judgment was wrongly decided. *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 421 (3d Cir. 2003).

The first and third requirements are clearly met in this case. The Plaintiff lost in state court when summary judgment was rendered against him on May 25, 2018, and that judgment was rendered before Plaintiff filed this federal suit on July 17, 2018. With respect to the second requirement, the Court finds that it is satisfied regarding allegations against NJT. Plaintiff alleges in his Complaint that that NJT did not answer the original complaint from the state-court matter, and that his default judgment was denied in Essex County and transferred to Camden County. The only facts in the Complaint concerning NJT relate to the wrist injury that is the subject of the underlying state court litigation. Since judgment in favor of the Plaintiff and against NJT on this injury would effectively reject the state court's judgment and fulfill the fourth prong of the *Rooker-*

*Feldman* analysis, this Court finds that Plaintiff''s state tort law clam against NJT is barred and must be dismissed with prejudice.

Nevertheless, Plaintiff is also bringing a Section 1983 conspiracy claim against all Defendants, contending that they conspired to deny him due process in state court. Such a claim may be independent of Plaintiff's tort law claims, and therefore not barred by *Rooker-Feldman*. *See Mikhail v. Kahn*, 991 F. Supp. 2d 596 (E.D. Pa. 2014) (finding that Section 1983 conspiracy claim was not barred by *Rooker-Feldman*) *aff'd*, 572 F. App'x 68 (3d Cir. 2014); *see also Great Western*, 615 F.3d at 172–73 (finding that claim of conspiracy to "reach a predetermined outcome in a case" was not barred by *Rooker-Feldman* because plaintiff's "entitlement to damages could be assessed without any analysis of the state-court judgments"). Because the Court can assess whether Defendants violated Plaintiff's due process rights without assessing the merits of his state tort law claim, the Court must take a closer look at Plaintiff's Section 1983 claims.

    2. *Sovereign Immunity*

Defendants assert that Plaintiff's Section 1983 claim against NJT is barred by the doctrine of sovereign immunity. The Eleventh Amendment "has been interpreted to render states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (internal quotation omitted). NJT is an "arm of the state" such that it may invoke New Jersey's sovereign immunity, immunizing it from Section 1983 lawsuits in federal court. *Karns v. Shanahan*, 879 F.3d 504, 519 (3d Cir. 2018).[2] As such, Plaintiff's Section 1983 claim against NJT must be dismissed, with prejudice.

---

[2] Under the recently enacted New Jersey Transit Corporation Employee Protection Act, N.J.S.A. 27:25–24.1, 27:25–24.2, NJT is prohibited from raising the sovereign immunity defense with respect to certain claims, including claims under the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq*. *Robinson v. New Jersey Transit Rail Operations,*

### 3. Section 1983 Claim Against Individual Defendants

Plaintiff contends that Defendants Orlando, Morocco, Jackson, and Haroldson conspired with NJT to deny him due process. Yet Plaintiff does not allege any specific actions taken by these Defendants to deny him due process. Indeed, the Complaint provides virtually no information on who these Defendants are or how they interacted with Plaintiff; what little the Court knows of them it gathered from the records submitted by Defendants with their Motion to Dismiss. Simply put, Plaintiff's bare allegation that he was denied due process is too conclusory to support a Section 1983 claim. Consequently, Plaintiff's claims against Orlando, Morocco, Jackson, and Haroldson must be dismissed, without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motions for Default Judgment are **DENIED** and Defendants' Motion to Dismiss is **GRANTED**, such that Plaintiff's claims against NJT are **DISMISSED WITH PREJUDICE** and his Section 1983 claims against Defendants Orlando, Morocco, Jackson, and Haroldson are **DISMISSED WITHOUT PREJUDICE**. An Order follows.

Dated: 02/21/2020 /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

---

*Inc.*, 776 F. App'x 99 (3d Cir. 2019). However, this statute does not impact NJT's ability to raise the defense with respect to Section 1983 claims.